UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. WILSON,<br><br>    Plaintiff,<br><br>    v.<br><br>OAKLAND UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 3:21-cv-09157-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>Re: Dkt. No. 82 |

Plaintiff Mark Wilson brings another amended complaint against his former employer, the Oakland Unified School District ("OUSD"), as well as individual Jenine Lindsey, an executive director of OUSD (collectively, "the defendants"). He again alleges that he was fired from his position as a school security guard for discriminatory and retaliatory reasons related to his reports of unsafe and unlawful conduct by school employees. After at least four opportunities to amend his complaint, including two with counsel, Wilson still fails to allege that his claims survive the defendants' judicial exhaustion, collateral estoppel, and statute of limitations arguments. The defendants' motion is therefore GRANTED, with prejudice.

**BACKGROUND**

**I.   FACTUAL BACKGROUND**

Wilson alleges the following in his operative Fourth Amended Complaint ("FAC") [Dkt. No. 81].

Wilson began work at OUSD in 2005. *Id.* ¶¶ 17, 20. From 2007 until his termination in 2019, he served as a school security guard for Rusdale High School in Oakland, California. *Id.* ¶¶ 19-20. Though he was a "classified employee," not a teacher, he was regularly assigned to teach classes and substitute for missing teachers. *See id.* ¶¶ 20, 23-25. He was made to falsely

certify that those classes were taught by credentialed teachers, and he says these certifications were unlawful. *Id.* ¶ 23. Spending time teaching classes took away from the time that he could spend on his security guard duties, and he "raised multiple, repeated concerns" to the school principal, Willie Thompson, about the lack of campus supervision for students. *See id.* ¶¶ 24-25. He also generally alleges that he raised concerns that he could not serve as a certified instructional teacher under California law. *Id.* ¶ 43.

According to the FAC, on September 17, 2018, Wilson was in his office with another Rusdale employee when he saw on video surveillance a "large group" of students congregating near an off-limits area of the school. *Id.* ¶¶ 26-27, 30, 32. A few minutes later, a girl student entered an off-limits locker room near Wilson's office. *Id.* ¶ 34. Wilson directed another girl student to enter the locker room to instruct the first student to exit, and both students soon left the area. *See id.* Later that afternoon, an OUSD police officer instructed Wilson to leave campus, and he has not been permitted to return. *Id.* ¶ 35.

On October 23, 2018, Wilson was informed that the OUSD police were investigating alleged misconduct from September 17. *Id.* ¶ 37. Wilson learned that he "was accused of having inappropriate physical contact with one of the female students" near the locker room. *Id.* Wilson denies that such contact occurred. *Id.* He also alleges that the school only maintains surveillance footage for thirty days, so by the time he learned of the charges, the surveillance footage was gone. *See id.* at ¶ 36.

The OUSD police recommended that Wilson be suspended for five days without pay. *Id.* ¶ 39. Jenine Lindsey decided to terminate Wilson instead. *Id.* OUSD held a *Skelly* hearing concerning Wilson's termination on February 11, 2019, which Wilson attended. *Id.* ¶ 41. Wilson asserts that he did not receive a fair opportunity to defend himself at this hearing because he was not represented by counsel, he could not call or examine witnesses, he was not allowed to testify on his own behalf, he was not permitted to submit a written statement or make opening or closing arguments, he did not receive a verbatim transcript, and his hearing officer was not neutral. *Id.* ¶ 41. The *Skelly* hearing "ultimately upheld" Lindsey's termination decision. *Id.* ¶ 42.

On March 21, 2019, Wilson received a letter from OUSD with the findings from the

hearing, which confirmed that he would be dismissed "effective immediately." *Id.* Ex. A. It also provided that he would remain on paid administrative leave through April 8, 2019. *Id.* Wilson generally asserts that he made "many repeated requests for review" of that decision. *Id.* ¶ 48.

On January 24, 2020, he "arrived for an arbitration hearing" for review of the decision. *Id.* Rather than arbitrate, OUSD told Wilson that it wanted to settle instead. *Id.* Wilson alleges that Lindsey "was materially involved" in the decision to settle instead of arbitrate. *Id.*

On February 25, 2020, Wilson received the written settlement terms, which he says were different from the terms that were verbally agreed to on January 24. *Id.* ¶ 49. He says that he requested additional time to respond to the settlement but did not hear back from Lindsey or OUSD. *Id.*

On May 15, 2020, Wilson filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which jointly filed with the California Department of Fair Employment and Housing ("DFEH"). *Id.* ¶ 50. Wilson received his right to sue letter on May 19, 2020. *Id.* ¶ 59.

## II.   PROCEDURAL BACKGROUND

Wilson filed his first complaint in this court pro se on November 26, 2021. [Dkt. No. 1]. Subsequently, the defendants moved to dismiss several iterations of Wilson's complaint, and I have granted their motions three times with leave to amend, including after Wilson was appointed pro bono counsel. [Dkt. Nos. 37, 49, 80]. Each iteration of the complaint asserted slightly different causes of action, though the most recent Third Amended Complaint asserted essentially the same causes of action as those asserted in the operative FAC, and my order dismissing that complaint is most relevant. ("Prior Order") [Dkt. No. 80].

Now Wilson has filed his FAC asserting five causes of action: (1) retaliation motivated by protected First Amendment conduct, under 42 U.S.C. § 1983, FAC ¶¶ 69-71; (2) whistleblower retaliation based upon protected disclosure of misconduct, in violation of California Labor Code section 1102.5(c), *id.* ¶¶ 72-73; (3) violation of the Reporting by School Employees of Improper Government Activities Act under California Education Code section 44114, *id.* ¶¶ 74-75; (4) race discrimination in violation of California Government Code section 12940(a), *id.* ¶¶ 76-85; and (5)

failure to prevent discrimination in violation of California Government Code section 12940(k), *id.* ¶¶ 86-93.

The defendants moved to dismiss all five causes of action. ("Mot.") [Dkt. No. 82]. Wilson opposed. ("Oppo.") [Dkt. No. 84]. The defendants replied. ("Repl.") [Dkt. No. 85]. I held a hearing at which counsel for both parties appeared.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

4

**DISCUSSION**

The defendants move to dismiss all of Wilson's claims for judicial exhaustion and collateral estoppel reasons. They also move to dismiss the race discrimination claim for failure to administratively exhaust, the state Labor Code and Education Code claims for failure to comply with the California Government Claims Act ("CGCA"), and the First Amendment claim as untimely. *See* D. Mot. Many of these arguments were addressed in the Prior Order, which granted Wilson leave to amend his complaint to add plausible allegations that would survive a subsequent motion. Upon review, he has failed to do so.

## I. THE RACE DISCRIMINATION CLAIM

As a preliminary matter, Wilson's opposition voluntarily dismissed his fourth case of action for race discrimination. Oppo. 2:3-9. It is DISMISSED with prejudice.

In reply, the defendants argue that because that claim is dismissed, the fifth cause of action for failure to prevent race discrimination must also be dismissed. Repl. 1:4-15. They cite California case law that provides, if "a plaintiff cannot establish a claim for discrimination, the employer as a matter of law cannot be held responsible for failing to prevent [the] same." *Featherstone v. S. Cal. Permanente Med. Grp.*, 10 Cal. App. 5th 1150, 1166 (2017) (citation omitted). The *Featherstone* court found that the plaintiff could not establish her discrimination claim as a matter of law and therefore could not bring a derivative failure to prevent claim. *See id.* But here, Wilson did not concede that he cannot establish the facts of discrimination or that it fails as a matter of law—he agreed to dismiss "[i]n the interest of judicial economy and efficiency," not for merits-based reasons. Oppo. 2:7-8. And the defendants do not argue that Wilson cannot establish as a matter of law that race discrimination occurred, nor do they argue that even if Wilson's race discrimination claim is procedurally barred (for example, for administrative exhaustion reasons) his failure to prevent claim is automatically barred as well. Accordingly, the defendants' request to dismiss the failure to prevent claim is DENIED on this basis. For the reasons that follow in the next section, however, the failure to prevent claim must be dismissed.

## II. JUDICIAL EXHAUSTION AND THE STATE LAW CLAIMS

In the Prior Order, I dismissed Wilson's state law claims under the California Labor Code,

5

Government Code, and Education Code for failure to allege judicial exhaustion.[1] Prior Order 10:1-11:6. I granted leave because I found that Wilson could possibly amend his complaint to make such allegations, or, "though less likely," to plead facts he was not required to judicially exhaust the claims because his *Skelly* hearing lacked sufficient judicial characteristics. *See id.* The FAC takes the latter path. Wilson alleges that the *Skelly* hearing did not provide a fair opportunity to defend himself because his union representative at the hearing was not an attorney and failed to conduct discovery or legal research; he could not call or examine his own witnesses, present evidence, or cross-examine OUSD's witnesses; he never received a "verbatim transcript" of the hearing; he did not have the opportunity to submit a written statement or make opening or closing statements; and the hearing officer was not neutral because he previously worked for OUSD. FAC ¶¶ 7, 41; *see also* Oppo. 8:22-11:9. The defendants argue that Wilson fails to plead judicial exhaustion because the *Skelly* hearing provided a fair opportunity to litigate all of the issues he raises in this court. *See* Mot. 15:11-17:11.

Issues of judicial exhaustion arise "when a party initiates and takes to decision an administrative process," regardless of whether the party was required to go through that process as a matter of administrative exhaustion. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 113, 194 P.3d 1026, 1041 (2008). "Once a decision has been issued, provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings." *Id.* (citation omitted). "Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims." *Id.* (citation omitted).

Judicial exhaustion is similar to and encompasses the effects of issue preclusion, which "bars the relitigating of issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity." *Knickerbocker v. City of Stockton*, 199 Cal. App. 3d 235,

---

[1] The Prior Order contained a typographical error that referred to this claim as brought under California Labor Code section 11092.5(c), but the reference to and analysis of this claim concerned the section 1102.5(c) cause of action. *See* Prior Order 10:24-25.

242 (1988) (citing *People v. Sims*, 32 Cal. 3d 468, 478-79, 651 P.2d 321, 327 (1982)). "California precedent makes clear that an administrative hearing, to qualify as sufficiently 'judicial' for collateral estoppel purposes, need not be identical to a judicial trial, so long as basic due process considerations are satisfied." *Basurto v. Imperial Irrigation Dist.*, 211 Cal. App. 4th 866, 884 (2012). "Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." *Pac. Lumber Co. v. State Water Res. Control Bd.*, 37 Cal. 4th 921, 944, 126 P.3d 1040, 1054-55 (2006) (citing *Sims*, 651 P.2d at 328-29). Where administrative proceedings lack sufficient judicial characteristics, a party is "not required to seek judicial relief to set aside any findings or bear the consequences of their binding effect." *McDonald*, 194 P.3d at 1041 (citations omitted).

Additionally, and as relevant to this case, a party has two options following an adverse decision from a *Skelly* hearing: "the employee may petition [the deciding] body for a rehearing. As an alternative or in addition to the rehearing procedure, the employee may seek review of the [body's] action by means of a petition for writ of administrative mandamus filed in the superior court." *Skelly v. State Pers. Bd.*, 15 Cal. 3d 194, 204-05, 539 P.2d 774, 782 (1975) (first citing Cal. Gov. Code § 19586; then citing Cal. Gov. Code § 19588; and then citing *Boren v. State Pers. Bd.*, 37 Cal. 2d 634, 637, 234 P.2d 981 (1951)). Petitioning for rehearing requires that the employee file "in writing . . . all of the grounds upon which a rehearing should be granted." Cal. Gov. Code § 19586.

Rather than alleging that he petitioned for rehearing or sought a writ of mandamus, *see id.*; *Skelly*, 539 P.2d at 782, Wilson alleges that his *Skelly* hearing lacked sufficient judicial characteristics to have preclusive, binding effects on future litigation. The defendants counter that Wilson's allegations directly contradict the record from the hearing that was attached to Wilson's termination letter. They request judicial notice of the exhibits to Wilson's termination letter. ("RFN") [Dkt. No. 83]. Though Wilson attached the letter itself to his FAC, he did not attach the

letter's exhibits. *See* [Dkt. No. 81-1]. That March 21, 2019 letter stated that Wilson would be dismissed immediately, following the recommendation from the *Skelly* hearing officer, and also stated, "I have received the *information submitted (attached)*, and I am in agreement with the assessment and recommendation of the Hearing Officer." *Id.* (emphases added).

The defendants ask that I consider the "information submitted" and attached to the March 21 letter in deciding this motion, and I will. Though the defendants request judicial notice of that information, they fail to explain the request,[2] and it seems they intended to seek incorporation by reference. *See Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 866 (N.D. Cal. 2022) (subsequent history omitted) ("The doctrine of incorporation by reference is distinct from judicial notice."). Incorporation by reference "permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleadings.'" *Id.* (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999), *superseded by statute on other grounds*). Even if "the plaintiff does not explicitly allege the contents of the document in the complaint," incorporation by reference may extend to include a document that the defendant "was allowed to attach" to its motion to dismiss, so long as the plaintiff's claim "depend[s] on the contents of the document and the parties [do] not dispute the authenticity of the document." *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." (citation omitted)).

The attachments to the March 21 letter meet the requirements of the incorporation by reference doctrine. Wilson does not dispute the authenticity of the attachments, *see Al-Ahmed*, 603 F. Supp. 3d at 866, nor does he dispute that he received those exhibits and that they were in fact part of the letter he submitted with his FAC, *cf. Marder*, 450 F.3d at 448 (looking to whether

---

[2] Inexplicably, for a third time the defendants filed a request for judicial notice that cites no law and contains no explanation for why I may take notice of the documents. [Dkt. Nos. 22, 65, 83]. Counsel should take care in future cases to properly support their arguments with law and reason.

8

the complaint refers to the document). The exhibits are central to his claims, *see id.*, because they relate directly to the procedure provided at the *Skelly* hearing and whether it constituted a "quasi-judicial" proceeding, *see McDonald*, 194 P.3d at 1041. And Wilson does not contest that he submitted only part of the letter, nor does he contest judicial notice or incorporation by reference, the latter of which he was given the opportunity to address at the hearing on this motion. Instead, he argues that the defendants "heavily extrapolate" from the "summary" of the hearing—the partial document that he attached to his FAC—but he steadfastly ignores that the rest of that document contained much more than the summary. *See* Oppo. 10 n.1. The exhibits meet the requirements for incorporation by reference. *See Al-Ahmed*, 603 F. Supp. 3d at 866; *Marder*, 450 F.3d at 448. I will consider the exhibits, not for the truth of the findings about what happened during the locker room incident or why his employment was terminated, but for the existence of the hearing and procedure itself.

Most of Wilson's allegations starkly contradict the contents of the letter, even setting aside the truth of the findings in the report. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (holding that, on a motion to dismiss, courts need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice" (citation omitted). For example, the letter's attachments show that two union representatives were present and argued on Wilson's behalf at the hearing, which contradicts his assertion that he did not have representation. *See* [Dkt. No. 81-1]. Additionally, the very existence of the report attached to the letter contradicts Wilson's assertion that there is "no official record or transcript" of the hearing or that he could not appeal the hearing decision without a "detailed and neutrally prepared[] record." Oppo. 9:27-10:9. Wilson does not contest that the report was itself a detailed record of the hearing, or that it laid out the individuals present, the arguments made, the evidence presented, and the ultimate findings. Regardless of the truth of its findings, the report itself precludes these arguments.

Additional contradictions are central to Wilson's judicial exhaustion allegations. *See Marder*, 450 F.3d at 448. He asserts that he was unable to call and examine his own witnesses or cross-examine other witnesses, Oppo. 9:21-26, 10:10-21, but the report shows that he testified on

1 his own behalf and that he submitted evidence to support his case, including many external
2 character references—which Wilson conspicuously does not contest in opposition. Combined
3 with the presence of his union representative, these render implausible his conclusory allegations
4 about calling witnesses. And though he argued at the hearing on this motion that he was
5 precluded from cross-examining the student-complainants at the hearing, he does not plausibly
6 allege that he was not allowed to call them as hostile witnesses.

7 Wilson's argument that he was unable to present an adequate defense because he was not
8 informed that the hearing would concern conduct beyond the September 17 incident in the locker
9 room is also contradicted by the exhibits. *See* FAC ¶ 41. The attachments to the March 21 letter
10 show that on December 20, 2018—six weeks before the *Skelly* hearing on February 11, 2019—
11 Wilson received a letter with the statement of charges against him that also included as
12 attachments a description of "previous incidents" of "unprofessional conduct" dating back to
13 2017. [Dkt. No. 83] Ex. 1 at pdf 9, 23-25. Though I do not consider the facts in these documents
14 for their truth, I consider the documents themselves to the extent that they were provided to
15 Wilson well in advance of the *Skelly* hearing. He does not contest that he received these
16 documents or that they are authentic.

17 These contradictions show that Wilson fails to plausibly allege that the *Skelly* hearing was
18 not a "quasi-judicial" proceeding. The FAC and attachments to the letter show that there was "a
19 hearing before an impartial decision maker"; the parties were able to "call, examine, and cross-
20 examine witnesses, to introduce documentary evidence, and to make oral . . . argument"; there was
21 "a taking of a record"; and there was "a written statement of reasons for the decision." *Pac.*
22 *Lumber Co.*, 126 P.3d at 1054-55 (citing *Sims*, 651 P.2d at 328-29). Though it is not clear from
23 the FAC whether the testimony was given under oath, whether the parties could subpoena
24 witnesses, or whether they could make written arguments, California law does not apparently
25 *require* each of this for a proceeding to be sufficiently judicial in character. *See id.* (explaining
26 that these are "indicia" considered by the court); *see also McDonald*, 194 P.3d at 1041 (explaining
27 these facts are considered). And importantly, the facts here are similar to those in *Sims*, 651 P.2d
28 at 328, where the California Supreme Court held that a hearing was sufficiently judicial in

1    character to have collateral estoppel effects when it featured an impartial hearing officer, sworn

2    testimony, witnesses, submitted evidence, and a written statement of reasons. Together, then,

3    Wilson fails to plausibly allege that his *Skelly* hearing was not a "quasi-judicial" proceeding or

4    that the findings do not a preclusive effect on this litigation. *See Pac. Lumber Co.*, 126 P.3d at

5    1054-55; *McDonald*, 194 P.3d at 1041; *Knickerbocker*, 199 Cal. App. 3d at 242.

6          Wilson's reliance on *Ahmadi-Kashani v. Regents of University of California*, 159 Cal.

7    App. 4th 449 (2008), is unpersuasive given the significantly different factual context. There, the

8    plaintiff repeatedly attempted to report sexual harassment at her job, but her employer did not

9    convene the "meeting" required by the grievance process until the plaintiff finally filed a claim

10   with the DFEH. *Id.* at 454-55. And at that meeting, witnesses were not placed under oath,

11   documentary evidence was not allowed, third-party witnesses could not be called, and the

12   plaintiff's counsel could not cross-examine the alleged harasser. *Id.* After an adverse finding—by

13   the defendant's "Associate Vice Chancellor," rather than the hearing officer—the plaintiff sued in

14   state court instead of appealing through the administrative grievance process. *See id.* at 455. The

15   court of appeal held that the plaintiff was not required to judicially exhaust her claim through the

16   grievance process before filing the lawsuit because the "meeting" was not a "quasi-judicial

17   hearing" as it did not give the plaintiff "an opportunity to *prove* her case," given the lack of sworn

18   testimony, cross-examination, and evidence, and because someone other than the hearing officer

19   wrote the decision yet no record of the meeting was made. *Id.* at 458; *see also id.* at 459 ("[T]he

20   hearing was not intended as a means for evaluating the truth of [the plaintiff's] contentions. It was

21   merely a 'discussion.'").

22         Not only are those facts very different from the ones here, but also the *Ahmadi-Kashani*

23   court distinguished its facts from other cases where the plaintiffs participated in "full-blown

24   'quasi-judicial' hearing[s]" that led to "comprehensive" decisions on the merits of the claims. *See*

25   *id.* at 456-59 (first citing *Page v. Los Angeles Cnty. Prob. Dep't*, 123 Cal. App. 4th 1135 (2004);

26   and then citing *Schifando v. City of Los Angeles*, 31 Cal. 4th 1074, 79 P.3d 569 (2003), *as*

27   *modified* (Dec. 23, 2003)). Here, of course, Wilson's letter and the incorporated attachments show

28   that he was given every opportunity to "prove" his case. He testified and presented evidence,

11

1  there was a report with detailed findings, and the report was written by the hearing officer.

2  Though Wilson conclusorily asserts that the hearing officer was biased, he does not contest that

3  the officer accurately drafted the report. Indeed, Wilson's case aligns much more closely with

4  those distinguished by the *Ahmadi-Kashani* court for providing sufficient "quasi-judicial" hearings

5  and decisions.

6  Accordingly, Wilson fails to plead non-conclusory allegations that the *Skelly* hearing

7  lacked sufficient judicial characteristics or otherwise was not a quasi-judicial hearing under the

8  law. *See McDonald*, 194 P.3d at 1041. He was therefore required to judicially exhaust his claims

9  by filing a writ of mandate with the superior court or petitioning for rehearing. *See Skelly*, 539

10  P.2d at 782. Because he did not do so, and does not allege that he did so, the findings from the

11  *Skelly* hearing have a binding and preclusive effect on this litigation. *See id.* And as explained in

12  the Prior Order, this binding and preclusive effect applies to the issues litigated at that hearing and

13  those that were "necessarily decided" at the hearing. *See Knickerbocker*, 199 Cal. App. 3d at 242.

14  That includes Wilson's claims here for retaliation under the California Labor Code, for violation

15  of California Education Code section 44114, and for failure to prevent discrimination under

16  California Government Code section 12940(k). These claims are therefore DISMISSED. Because

17  I have already granted Wilson leave to amend these claims multiple times and he has repeatedly

18  failed to allege sufficient facts, the claims are dismissed with prejudice.[3]

19  **III.   COLLATERAL ESTOPPEL AND THE FIRST AMENDMENT CLAIM**

20  My Prior Order found that it was "not clear" whether Wilson's First Amendment claim

21  was subject to the same judicial exhaustion arguments, but that collateral estoppel could apply

22  under federal law, and that Wilson failed to plead that he was not collaterally estopped from

23  bringing the claim. Prior Order 11:7-12:10.

24  "[F]ederal courts give preclusive effect to the findings of state administrative tribunals in

25  subsequent actions under § 1983," including legal and factual issues, "even if unreviewed, so long

---

[3] Because these claims are dismissed with prejudice, I need not address the defendants' arguments about failure to comply with the CGCA or the statute of limitations argument about the section 1102.5(c) claim.

as the state proceeding satisfies the requirements outlined in [*United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966)]." *Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994), *as amended* (Dec. 27, 1994) (citations omitted). Those requirements are "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." *Id.* at 1033 (citing *Utah Construction*, 384 U.S. at 422). "[T]he threshold inquiry for a court deciding whether to give preclusive effect to a state administrative adjudication, is to determine whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment." *Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir. 1986) (citing *Utah Construction*, 384 U.S. at 422).

There is no "indiscriminate presumption" that the administrative proceedings were adequate; rather, federal courts "must carefully review the state administrative proceeding to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions." *Id.* (footnotes omitted); *see also Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) ("State law . . . governs the application of collateral estoppel to a state court judgment in a federal civil rights action." (citing *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990)). California has adopted the *Utah Construction* requirements for this inquiry. *Miller*, 39 F.3d at 1033 (citing *Plaine*, 797 F.2d at 719-20 & n.13).

First, upon review of the record of the hearing incorporated into Wilson's FAC, *see Plaine*, 797 F.2d at 719, it is clear that OUSD and the hearing officer acted "in a judicial capacity" in line with the initial *Utah Construction* requirement, *Miller*, 39 F.3d at 1033. "To ascertain whether an agency acted 'in a judicial capacity,' the federal courts have looked for factors indicating that the administrative proceedings and determination possessed a '"judicial" character.'" *Sims*, 651 P.2d at 328 (collecting cases). The *Sims* court found that the state administrative hearing constituted a "judicial-like adversary proceeding" where the hearing was conducted in an impartial manner, the testimony was sworn, the parties called and examined witnesses, the parties introduced documentary evidence and made oral and written arguments, a "verbatim record" of the hearing was made, and the hearing officer provided a written statement of reasons that applied the rule to

13

the facts. *Id.* Subsequently, the Ninth Circuit in *Plaine*, 797 F.2d at 720, relied on *Sims* in holding that a hearing met the *Utah Construction* requirements where the parties were present and represented, they called and examined witnesses, there was a written decision, and the decision applied a rule to facts.

Almost all of the *Sims* and *Plaine* considerations were present at Wilson's *Skelly* hearing; he challenges only his lack of ability to submit a written statement and his lack of counsel. *See* FAC ¶ 41. But *Sims* and *Plaine* address these considerations as factors, not dispositive requirements, and Wilson points to no other authority that mandates each factor for a hearing to be sufficiently judicial. And here, the lack of written statement is counterbalanced by the notice to Wilson about the hearing and his clear opportunity to prepare and provide oral statements and examinations. Additionally, the allegation that Wilson had a union representative rather than an attorney goes more to the third *Utah Construction* factor—adequate opportunity to litigate—than this factor, which looks to the character of the proceedings themselves. *See Sims*, 651 P.2d at 328. Finally and importantly, here, as in *Plaine* and *Sims*, the FAC shows that the hearing officer applied facts to the rule—whether Wilson violated Administrative Regulation AR 4218 with disgraceful, discourteous, offensive, or abusive conduct, [Dkt. No. 83] Ex. 1 at pdf 3—meaning the proceeding was "adjudicatory in nature." *Plaine*, 797 F.2d at 720. Wilson fails to plausibly allege otherwise.

Second, Wilson fails to allege that the *Skelly* hearing did not "resolve disputed issues of fact properly before it." *Miller*, 39 F.3d at 1033. Regardless of the truth or accuracy of the findings themselves, the hearing record and the written statement of reasons provided by the hearing officer show that the officer resolved disputed issues of fact, including about the events related to the locker room incident. *Cf. Sims*, 651 P.2d at 329 (explaining the "disputed issue of fact resolved by the [administrative agency]"). Wilson does not assert otherwise.

Third, the FAC and incorporated exhibits show that the parties had an adequate opportunity to litigate. *See Miller*, 39 F.3d at 1033. Failing to introduce evidence "or otherwise participate at the hearing" does not necessarily mean there was no adequate opportunity to litigate; the inquiry instead looks to whether the party "had notice of the hearing as well as the opportunity

14

and incentive to present its case to the hearing officer." *Sims*, 651 P.2d at 329. Here, the attachments to the March 21 letter show that Wilson received a detailed notice of the hearing, including the statement of charges, on December 20, 2018. *See* [Dkt. No. 83] Ex. 1 at pdf 7-9. Wilson does not contend otherwise in opposition, and I need not accept as true any conclusory allegations that are contradicted by the attachments to the letter he received. *See Daniels-Hall*, 629 F.3d at 998. And Wilson had the opportunity and incentive to fully present his case; indeed, the fact that two union representatives were present and advocated on his behalf at the hearing—which he does not contest—strongly supports the finding that he had the opportunity to litigate. Being unhappy with his representation, failing to request an attorney rather than a union representative despite the time and opportunity to do so, or even failing to present certain arguments for his defense, do not mean that he did not have the opportunity to litigate. *Cf. Sims*, 651 P.2d at 329 (finding that failure to participate in the hearing does not necessarily defeat collateral estoppel). Wilson's FAC does not plausibly assert otherwise.

Accordingly, Wilson fails to plead that the *Skelly* hearing did not satisfy the *Utah Construction* requirements. And when administrative proceedings satisfy those requirements, the parties are bound by collateral estoppel and res judicata to the results of "the issues litigated." *Miller*, 39 F.3d at 1034 (citing *Swartzendruber v. City of San Diego*, 3 Cal. App. 4th 896, 908 (1992), *disapproved of on other grounds by Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 5 P.3d 874, 881 (2000)).

As I previously determined, Wilson's First Amendment claim was actually litigated at the *Skelly* hearing. To determine if an issue was litigated in an administrative proceeding, courts examine whether the cause of action presented in the judicial proceeding "encompasses the same primary right that was at stake in the [administrative] proceeding." *Id.* (quoting *Swartzendruber*, 3 Cal. App. 4th at 908). My Prior Order found that Wilson's First Amendment claim encompassed the same "primary right" at stake in the *Skelly* proceeding, which was his continued employment. Prior Order 12:3-9. I noted that Wilson's theory for his First Amendment claim is that he was retaliated against for speaking about staffing and safety issues and lost his job as a result, *see id.*, and he does not allege otherwise in his FAC. Rather, the facts of this case continue to parallel

15

1   those in *Miller*, 39 F.3d at 1032, where the plaintiff asserted wrongful termination throughout an
2   administrative proceeding, and instead of seeking review of that decision and judicially exhausting
3   his claim, he sued the defendants in federal court under § 1983. The Ninth Circuit held that his
4   alleged civil rights violations merely "restate[d] his wrongful termination contentions in
5   constitutional terms" because they both sought the same primary right of continued employment.
6   *Id.* at 1034-35 (citing *Swartzendruber*, 3 Cal. App. 4th at 908). That finding is again directly
7   applicable here, and Wilson does not argue otherwise.

For those reasons, the *Skelly* hearing met the *Utah Construction* requirements, and the First Amendment claim was actually litigated in that hearing. Wilson's complaint does not plausibly allege otherwise. Collateral estoppel therefore bars this claim. It is DISMISSED, and because Wilson previously had opportunities to amend, and he does not point to additional facts that he would be able to assert if he were again permitted amendment, this dismissal is with prejudice.

## IV.   STATUTE OF LIMITATIONS FOR FIRST AMENDMENT CLAIM

Finally, even if the First Amendment claim is not barred by collateral estoppel, it is barred by the statute of limitations. My Prior Order noted that the defendants raised a statute of limitations argument in reply and so I instructed Wilson to address the argument in his next amended complaint, if necessary or possible. Prior Order 21:27-22:16. That Order also found that Wilson's date of injury for the purposes of his First Amendment claim, which asserts that Lindsey retaliated against him for protected conduct, was April 8, 2019, the day he stopped being paid. *Id.* Wilson now asserts that the two-year statute of limitations should be equitably tolled to January 24, 2020, the date of the unsuccessful arbitration hearing. His new allegations include that, "[o]n information and belief, Ms. Lindsey was materially involved in the decision to scrap the arbitration hearing and pursue [a] verbal settlement agreement instead," and that "[i]mmediately prior to the start of arbitration proceedings, OUSD and Ms. Lindsey communicate their desire to settle, insisting Mr. Wilson make the first suggestion of a satisfactory monetary amount." FAC ¶¶ 48, 59.

For § 1983 actions, federal courts use the statute of limitations for personal injury actions in the forum state, which in California is two years. *See Mills*, 921 F.3d at 1166. Federal courts

also apply state law "regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Id.* (quoting *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007)). In California, equitable tolling can be applied where three factors are met: "(1) timely notice to the defendant . . . ; (2) lack of prejudice to the defendant in gathering evidence to defend . . . ; and (3) good faith and reasonable conduct by the plaintiff . . ." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009) (citing *Collier v. City of Pasadena,* 142 Cal. App. 3d 917, 924 (1983)).

     The complaint fails to allege any of the factors for equitable tolling. First, Wilson does not attempt to allege timely notice to the defendants. *See Hatfield*, 564 F.3d at 1185. It seems that OUSD and Lindsey were notified of Wilson's First Amendment claim for the first time during this litigation, which was filed almost two years after the January 24 date he seeks for equitable tolling. That relates to the third factor, good faith and reasonable conduct: even if Wilson was trying to settle his discrimination claims between his April injury date and the January arbitration date, there are no allegations about good faith or reasonable conduct with respect to his First Amendment claim. Together these go to the prejudice factor—there are no allegations that suggest that OUSD or Lindsey were on notice to gather evidence to defend against a retaliation claim until Wilson amended his complaint to include such a claim in 2022. And while it is true that under California law, equitable tolling is rarely denied at the motion to dismiss stage, *see Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1140 (9th Cir. 2001) (citing *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)), the law does not suggest that a plaintiff can plead this equitable relief wholly detached from the allegations in the complaint. Indeed, in *Daviton*, the Ninth Circuit reversed the district court's dismissal of the complaint because it found that the "complaint shows that [the plaintiffs] are able to satisfy all the requirements for equitable tolling under California law," as the complaint included allegations that went to all three factors. 241 F.3d at 1141-42; *see also Cervantes*, 5 F.3d at 1276-77 (same). Here, there are no such allegations, despite Wilson's opportunity for amendment.

     At bottom, the problem with Wilson's reliance on equitable tolling is that his chosen date is entirely arbitrary, as alleged. The FAC does not connect the January 24 date to his First

17

1  Amendment injury caused by Lindsey, which allegedly occurred on April 8, 2019, when he was
2  fired by Lindsey for making protected statements. Wilson's only allegations about January 24
3  were that Lindsey was there, that she decided to settle instead of arbitrate, and that she said Wilson
4  should make the first suggestion about the settlement amount. *See* FAC ¶¶ 48, 59. None of this
5  goes to any of the equitable tolling factors, or even relates to his injury.

6  Accordingly, Wilson fails to allege that equitable tolling would apply to his otherwise time
7  barred First Amendment claim. It is DISMISSED with prejudice, as he was already given the
8  opportunity to amend, and he points to no additional facts or explanations that he could plead in
9  another amended complaint to avoid dismissal.

## CONCLUSION

For those reasons, the defendants' motion is GRANTED with prejudice.

**IT IS SO ORDERED.**

Dated: March 12, 2024



William H. Orrick
United States District Judge